**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Thomas Izzarelli,** | ) | **CASE NO. 1:15 CV 457** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **The Lubrizol Corporation** | ) | |
| **Long Term Disability Plan, et. al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the parties' cross-motions for judgment on the

administrative record (Docs. 17 and 18). This case arises under the Employee Retirement

Security Act of 1974 ("ERISA"). For the reasons that follow, defendants' motion is GRANTED,

and plaintiff's motion is DENIED.

**FACTS**

Plaintiff is an employee of The Lubrizol Corporation ("Lubrizol"). Defendants are

Lubrizol and The Lubrizol Corporation Long-Term Disability Plan ("the Plan"). As an

employee, plaintiff is entitled to participate in the Plan.

1

Plaintiff sustained a disabling injury at work in July of 2011. He filed for long-term disability benefits under the Plan in December of 2011. His claim was approved in January of 2012, and he began receiving $544.94 bi-weekly from the Plan.

On October 1, 2013, plaintiff filed an Application for Determination of Percentage of Permanent Partial Disability with the Ohio Bureau of Worker's Compensation ("BWC"). The BWC found that plaintiff was permanently partially disabled ("PPD") and entitled to a PPD award. On April 3, 2013, the BWC awarded him a lump sum of $4,698.

On April 30, 2014, Lubrizol sent plaintiff a letter informing him that, "according to our LTD Plan, income from workers comp does reduce your LTD bi-weekly payment." The letter further explained that his long-term disability payments would be reduced from $544.94 per pay period to $478.78 for 71 bi-weekly payments.

Shortly afterward, plaintiff filed his appeal with the Lubrizol Employee Benefits Administrative Committee (the "Committee"). He argued, as he does here, that his PPD benefits award was not an "Income Benefit" as outlined in the Plan but was instead a damage award. As such, he contended that the Plan should not have deducted the award from his long-term benefits. Over plaintiff's objection, the Committee issued its final decision on August 26, 2014, affirming the offset. In reaching its decision, the Committee reviewed plaintiff's file and all of the information that he submitted. It "did not afford deference to the initial adverse benefits determination."

The Committee concluded that plaintiff's PPD benefits were subject to the Reduction of Benefit provision in Section 2.3(b) of the Plan. That section provides:

> 2.3 Reduction of Benefit. The amount of Benefits payable hereunder (other than, for a participant who has elected the 70% Benefit level, the amount of the Benefit

above the 60% Benefit level) shall be reduced by the amount of the Employee's earnings and benefits from other sources including but not limited to:

\*\*\*

b. Disability, retirement or unemployment benefits provided for under any law of a government, such as Social Security (family benefits), worker's compensation, unemployment compensation, and wage replacement benefits, including any lump sum awards; provided, however, that cost-of-living increases shall not be included as earnings and benefits from other sources.

The Committee determined that plaintiff's benefits under the plan should be reduced by the amount of the PPD award because the award "reflects 'benefits from other sources including...[d]isability...benefits provided under any law of a government, such as...worker's compensation.'"

Thereafter, plaintiff filed suit in this Court, asserting claims under §§ 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3). Now pending before the Court are the parties' cross-motions for judgment on the administrative record.

## STANDARD OF REVIEW

Normally, a district court applies a *de novo* standard of review to a plan administrator's denial of benefits. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). But when a plan administrator is given discretionary authority to determine eligibility for benefits or to construe the plan terms, the court applies "the highly deferential arbitrary and capricious standard of review." *Id.* (internal quotations omitted). This is the "least demanding form of judicial review of administrative action....When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Id.* at 877. A federal court's job, however, is not to merely "rubber stamp[]" the administrator's decision. *Moon v. UnumProvident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Instead, it must

consider the evidence and determine if the decision was based on a "principled reasoning process" and "substantial evidence." *Evans*, 434 F.3d at 876. In evaluating a plan administrator's decision, the court's review is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

The Sixth Circuit recognizes that "a conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits." *Evans*, 434 F.3d at 876. The conflict of interest does not displace the arbitrary and capricious standard. Instead, it is a factor that the court considers when deciding if the administrator's decision was arbitrary and capricious. *Id.*

In this case, the Plan vested Lubrizol, the Plan Administrator, with discretionary authority:

> 7.2 Fiduciaries. The Company shall be a named fiduciary under the Plan in accordance with Section 402 of ERISA. As a fiduciary, the Company shall have total discretion in the exercise of its responsibilities unless it abuses such discretion by acting arbitrarily and capriciously.

The Court will therefore apply the arbitrary and capricious standard in reviewing the Committee's decision to offset plaintiff's long-term disability benefits with his PPD benefits. Because Lubrizol both determines eligibility and pays participants' benefits, the Court will consider this conflict of interest as a factor in making its determination.

## **ANALYSIS**

1.  Plaintiff's ERISA § 502(a)(1)(B) claim

Federal courts apply "'general rules' of contract law as part of the federal common law"

when interpreting an ERISA plan. *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002). Courts must interpret plan provisions "according to their plain meaning, in an ordinary and popular sense" and must "give effect to the unambiguous terms" of the plan. *Id.* at 618 (internal quotations omitted). A contract term is ambiguous if it is subject to two reasonable interpretations. *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996). Only if a court finds that a term is ambiguous can it use "traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Id.* (internal quotations omitted). Extrinsic evidence, however, may not be used to create an ambiguity. Rather, the ambiguity must be "apparent on the face of the contract." *Id.*

Defendants argue that Section 2.3(b) of the Plan unambiguously mandates that PPD benefits be deducted from a long-term disability award. In support, they state that plaintiff's "PPD award was obviously a disability benefit. PPD benefits are only awarded in Ohio if the employee can show a disability. *See* Ohio Rev. Code § 4123.57." Further, defendants argue that the Plan "expressly lists 'workers' compensation' among the types of 'disability benefits' that shall be deducted from a participant's [long-term disability] benefit." Because plaintiff's PPD award was a disability benefit provided under Ohio's worker's compensation laws, defendants assert that the Committee correctly concluded that his long-term disability award should be reduced by the amount of his PPD benefit.

Plaintiff asserts that Section 2.3(b) is ambiguous because the Plan "clearly did not intend that all [workers compensation] benefits would be deductible." Specifically, he argues that the Plan only intended that long-term disability awards should be reduced by "income benefits." He

then maintains that his PPD award was not an "income benefit" because it was not intended to compensate for an ongoing loss of earnings but is more "akin to a damage award." Pl.'s Mot. for J. on the Admin. Rec. at 9 (citing *Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St. 3d 16 (2005)).

To support his position that Section 2.3(b) is ambiguous, plaintiff points to several pieces of extrinsic evidence. First, he received an informational packet in 2011 that stated that his disability benefit could be reduced by "income from the sources listed below." Second, the April 30, 2014, letter he received from Lubrizol informed him that "income from workers comp does reduce your [long-term disability] bi-weekly payment." Third, the section in the Plan's summary plan description regarding deductible amounts is entitled "Other Income Benefits" and informs employees that "income from the sources listed below" are deductible from long-term disability benefits. Fourth, plaintiff notes that Lubrizol paid tens of thousands of dollars in medical bills related to his workers compensation claim but did not reduce his benefits by this amount.

The Court finds that the Committee's decision that plaintiff's PPD benefits must be deducted from his long-term disability benefits was not arbitrary and capricious. There is no patent ambiguity in Section 2.3(b). On its face, the term clearly provides that long-term benefits shall be reduced by the amount of any disability benefits provided for by worker's compensation laws–without regard to whether the payments were for loss of income. A PPD award unambiguously fits within this provision.

Plaintiff's attempt to create an ambiguity in Section 2.3(b) through extrinsic evidence is foreclosed by the Sixth Circuit's decision in *Schachner*, 77 F.3d at 893. Even if he could rely on extrinsic evidence, the evidence that he cites does not support his position. None of the materials

6

that plaintiff relies on defines the phrase "income benefit," and plaintiff has produced no evidence to show that defendants intended the phrase to be so narrowly construed that it would exclude a PPD award. In fact, like Section 2.3(b) of the Plan, two of the extrinsic sources that he cites (the summary plan description and informational packet) state that "disability ... benefits provided for ... under workers' compensation" will reduce long-term benefits. Moreover, the term "income" is generally understood to be extremely broad: "general and legal sources ... commonly define 'income' to mean 'any money that comes in,' without regard to any related expenses incurred and without any requirement that the transactions producing the money result in a net gain." *Lukhard v. Reed*, 481 U.S. 368, 369 (1987). Plaintiff's PPD award fits this definition of "income."

Finally, the summary plan description was not a part of the administrative record, so the Court cannot even consider it in determining whether the Committee's decision was arbitrary and capricious. But assuming it had been a part of the record, plaintiff could not use it to change the plain terms of Section 2.3(b). In *Cigna Corporation v. Amara*, the Supreme Court held that the language in a summary plan description is not legally binding. 131 S. Ct. 1866, 1877-78 (2011). Statements in a summary plan description, therefore, cannot be used to "circumscribe or nullify the plain terms of the plan itself." *Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Program*, 572 F. App'x 309, 314 (6th Cir. 2014).[1]

Because the Committee's decision was based on a principled reasoning process and

---

[1]     Certainly if statements in a summary plan description (which the plan is statutorily required to provide under ERISA §102(a)) cannot change the terms of the plan, then statements in informal documents such as the informational booklet and letter that plaintiff relies on cannot do so either.

substantial evidence and there is no evidence that a conflict of interest affected its decision, the

Court concludes that defendants are entitled to judgment on plaintiff's denial of benefits claim

under § 502(a)(1)(B) of ERISA.

2.   Plaintiff's ERISA § 502(a)(3) claim

To the extent that plaintiff brings a claim under ERISA § 502(a)(3), such a claim also

fails.[2] In general, "[p]rinciples of estoppel ... cannot be applied to vary the terms of unambiguous

plan documents; estoppel can only be invoked in the context of ambiguous plan provisions."

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998). This is because estoppel

requires reasonable or justifiable reliance by the party asserting the estoppel, and a party's

reliance is not reasonable if it is inconsistent with the clear and unambiguous terms of the plan.

*Id.* Moreover, allowing estoppel to override the clear terms of plan documents "would be to

enforce something other than the plan documents themselves." *Id.* Thus, only in unique

circumstances can a plaintiff invoke equitable estoppel where a plan document is unambiguous.

To do so, the plaintiff must be able to demonstrate the traditional elements of estoppel plus (1) a

written representation; (2) plan provisions which, although unambiguous, do not allow for

individual benefit calculation; and (3) extraordinary circumstances in which the balance of

equities strongly favors the application of estoppel. *Bloemker v. Laborers' Local 265 Pension*

---

2       *See* Report of Parties' Planning Meeting (Doc. 10) at ¶ ("Plaintiff has informed
        Defendant that no claim for breach of fiduciary duty is asserted in this action and
        that Plaintiff relies on [§ 502(a)(3)], if at all, only insofar as it relates to his claim
        for 'benefits due him under the terms of his plan' pursuant to [§ 502(a)(1)(B)] and
        the relief awardable on that claim."); Pl.'s Mot. for J. on the Admin. Rec. at 11
        ("Assuming, arguendo, that Plaintiff's Permanent Partial award is deductible
        under the terms of the Plan, that outcome would reveal 'a material conflict
        between the SPD and the ... Plan giv[ing] rise to a claim for equitable relief'
        under §502(a)(3)."). .

8

*Fund*, 605 F.3d 436, 444 (6ᵗʰ Cir. 2010).

Here, plaintiff has not even attempted to show how he meets the traditional elements of an estoppel claim. Estoppel requires: (1) misrepresentation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Id.* at 442. Even assuming that the defendants made misrepresentations about what types of benefits would be deducted from a long-term disability award, plaintiff has not shown that defendants intended for him to act upon such misrepresentations or how he relied to his detriment on them. Nor has plaintiff attempted to show how he meets the unique circumstances set forth in *Bloemker*. Defendants are therefore also entitled to judgment on plaintiff's claim under § 502(a)(3), to the extent that he has brought one.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 17) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (Doc. 18) is DENIED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/22/15
.

9